# 15-3883-cr

---

## UNITED STATES COURT OF APPEALS

For the

## SECOND CIRCUIT

---

UNITED STATES OF AMERICA,

Appellee,

v.

Rashin Lindsey, AKA Sealed Defendant 3, AKA Rashon Lindsay

[CAPTION CONTINUED ON NEXT PAGE],

---

On Appeal from the United States District Court
for the Southern District of New York

---

### BRIEF FOR DEFENDANT-APPELLANT RAHJOHN LEARY

Joyce C. London, Esq.
Joyce C. London, P.C.
59 Maiden Lane
New York, New York 10038
(212) 964-3700
jlondonlaw@aol.com

## [CAPTION CONTINUED]

AKA Master, AKA I-Mas, Rashon Edwards, AKA Sealed Defendant 7, AKA Scuss, Abdul Moore, AKA Sealed Defendant 4, Tyshawn Cox, AKA Sealed Defendant 6, AKA Ty Black, AKA Black, AKA Loyal Brim, Dewayne Stratford, AKA Sealed Defendant 1, AKA Duquan Stratford, Sabrina McNeal, AKA Sealed Defendant 8, AKA Brina, Brandon Fields, AKA Beast, Eugene Green, AKA Sealed Defendant 2, AKA Eugene Huntington, AKA Universe, AKA Uni, Jamar Mason, AKA Sealed Defendant 10, AKA Jay, Lincoln Rivas Pena, AKA Sealed Defendant 1, AKA Shorty, Anthony Rosario Garcia, Burnell Scott, AKA BU, AKA Sealed Defendant 1, Hakim Lowery, AKA Hak, Jaquan Walker, AKA Jump, Larry Green, AKA Mafia, AKA Maf, Burchanti Scott, AKA Napp, Jamar Edwards, AKA Point Guard, AKA Point, Dontrell Briggs, AKA Buster, AKA Bus, Derron Randolph, AKA D-Nice, Raheem Stewart, AKA Ruger, AKA Born-Ru, Alshaquen Nero, AKA Sha Brim, Myron Wilberly, AKA Brim Law, AKA B-Loved, Alterrell Williams, AKA T-Burn, Deshawn Stewart, AKA Tony Red, AKA Flip, Rachaun Parker, AKA Neph, AKA Ray Ray, Wesley Frame, AKA Sealed Defendant 9, AKA Jus-U, Rahjohn Leary, AKA Rajohn Leary, AKA Raji, Herbert Odom, AKA Sealed Defendant 5, AKA Nut,

Defendants,

Rahjohn Leary, AKA Rajohn Leary, AKA Raji, and

Herbert Odom, AKA Sealed Defendant 5, AKA Nut

Defendants – Appellants.

# Table of Contents

Preliminary Statement ............................................................................. 1

Jurisdictional Statement ......................................................................... 3

Statement of the Issues Presented .......................................................... 4

Statement of the Case .............................................................................. 5

I.  Standard of Review ........................................................................... 7

II.  Argument ........................................................................................... 8

  A.  The Government's Conduct Undermined the Plea Agreement ....................... 9

  B.  The September 2010 Conduct Should Not Count Both as Criminal History
     and Relevant Conduct ..................................................................... 11

  C.  To the Extent that the District Court Considered the September 2010
     Shooting to be Conduct Related to the Instant Case, Mr. Leary Should
     Receive Credit for the Time Already Served in Custody on that Charge ...... 14

III.  Conclusion ....................................................................................... 16

# Table of Authorities

## Cases

*Puckett v. United States*, 556 U.S. 129 (2009) ........................................................7
*United States v. Gonzalez*, 192 F.3d 350 (2d Cir. 1999) .........................................15
*United States v. Ready,* 82 F.3d 551 (2d Cir.1996) ..................................................9
*United States v. Riera*, 298 F.3d 128 (2d Cir.2002) .................................................7
*United States v. Rosa,* 123 F.3d 94 (2d Cir. 1997) ...................................................9
*United States v. Thomas*, 274 F.3d 655 (2d Cir.2001) .............................................8
*United States v. Wernick*, 691 F.3d 108 (2d Cir.2012)..............................................8
*United States v. Yemitan,* 70 F.3d 746 (2d Cir. 1995)................................................9

## Statutes

18 U.S.C. § 3231 ........................................................................................................3
18 U.S.C. § 3553 ........................................................................................................8
18 U.S.C. § 3585 ......................................................................................................15
18 U.S.C. § 3742 ........................................................................................................3
21 U.S.C. § 841 ............................................................................................. 1, 3, 5, 10
28 U.S.C. § 1291 ........................................................................................................3

## Other Authorities

United States Sentencing Guideline § 1B1.3.................................................... 15, 16
United States Sentencing Guideline § 1B1.4.................................................... 11, 12
United States Sentencing Guideline § 4A1.3........................................................12
United States Sentencing Guideline § 5G1.3........................................................15
United States Sentencing Guideline § 5H1.8........................................................12

## Rules

Federal Rule of Criminal Procedure 35 ...................................................................6
Federal Rule of Appellate Procedure 4(b) ...............................................................3

## PRELIMINARY STATEMENT

Defendant-appellant Rahjohn Leary entered a plea of guilty to a single count of violating 21 U.S.C. § 841(b)(1)(C) pursuant to an agreement with the government in which the parties stipulated that (1) Mr. Leary fell into Criminal History Category II under the United States Sentencing Guidelines and (2) that the offense level was 29. A. 18 – 23.[1] The resulting advisory sentence range was 97 – 121 months in prison. A. 20. In calculating the Criminal History Category, the parties included an aggravated manslaughter conviction in Passaic County Superior Court to which Mr. Leary had entered a guilty plea but had not yet been sentenced, though he had previously served 22 months in jail on the state charge before being released on bail. A. 20, 60, 92; CA. 17 – 18. Without that conviction as part of Mr. Leary's criminal history calculation, he would have been in Category I, with an advisory sentencing range of 87 – 108 months in prison.

Immediately before sentencing, the government unexpectedly and without notice to the defense submitted a letter from the grandmother of the victim of the Passaic County manslaughter, invited the family of that victim to attend the sentencing proceedings and discussed the Passaic County case as though it were relevant conduct to the federal charge. A. 100, 110, 114.

---

[1] References to the appendix are noted by "A." followed by page number and to the confidential appendix by "CA." followed by page number.

1

Subsequently, the District Court sentenced Rahjon Leary to 109 months in prison, taking into account the Passaic County case as part of Mr. Leary's criminal history and also referring to it in the context of his relevant past misconduct. A. 125. The court did not give him credit for the 22 months already served on the Passaic County case.

By treating the Passaic County case as unrelated criminal history and relevant to the instant, the sentence impermissibly punished Mr. Leary for the same conduct twice. The sentence here should be vacated and the matter remanded for resentencing.

## JURISDICTIONAL STATEMENT

This appeal involves an appeal after a plea and sentence for conspiracy to distribute narcotics in violation of 21 U.S.C. § 841(b)(1)(C) before the Honorable Laura Taylor Swain, United States District Court for the Southern District of New York. The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231 because this was a criminal case alleging violations of the laws of the United States. Jurisdiction in this appeal is therefore invoked in this Court pursuant to 28 U.S.C. § 1291, providing for appeal from a final decision of a district court, and 18 U.S.C. § 3742(a), providing for appeal of a sentence imposed under the Sentencing Reform Act. On March 25, 2015, appellant filed a timely notice of appeal pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure. A. 143.

## STATEMENT OF THE ISSUES PRESENTED

1. When a plea agreement was induced by treatment of a prior state conviction as part of an offender's criminal history conduct and not as relevant conduct but at sentencing the government argues that the facts underlying the prior state conviction should factor into both criminal history and relevant conduct, may a defendant who waived his right to appeal nevertheless challenge his sentence? YES

2. Did the District Court err in awarding criminal history points for a prior state case then also treating it as relevant conduct? YES

3. Did the District Court err in failing to give the defendant-appellant credit for time incarcerated in New Jersey for a prior state conviction on the basis of the conduct underlying the prior state conviction, which the government urged the court to take into consideration when fashioning a sentence? YES

## STATEMENT OF THE CASE

On July 10, 2015 defendant-appellant Rahjon Leary entered a plea of guilty to one count of conspiring to distribute narcotics in violation of 21 U.S.C. § 841(b)(1)(C). A. 24 – 53. Prior to doing so, Mr. Leary and the government jointly entered into a plea agreement that had been unilaterally drafted by the government. A. 18 – 23. In the plea agreement, the parties stipulated that Mr. Leary fell into Criminal History Category II under the United States Sentencing Guidelines. A. 18 – 23. The Sentencing Guidelines range under the plea agreement was 97 – 121 months. A. 20. When calculating the Criminal History Category, the parties included an aggravated manslaughter conviction in Passaic County Superior Court, for which Mr. Leary had not yet been sentenced. A. 20. That case involved the September 7, 2010 shooting death of rival gang member Nyjavar Jackson, also known as "Waka." A. 92. Mr. Leary had spent 22 months in jail in connection with the Waka shooting before being released on bail. A. 20, 60, 92; CA. 17 – 18. For purposes of the plea agreement, this September 2010 manslaughter was thus incorporated into Mr. Leary's criminal history background.

Not leaving it as simply part of Mr. Leary's criminal history calculation, however, the government in its sentencing memorandum addressed the details of the September 2010 case as well as an alleged, uncharged August 16, 2013 shooting. A. 92. Then, immediately before sentencing, unexpectedly and without

5

notice to the defense, the government submitted a letter from Nyjavar "Waka" Jackson's grandmother to the court, and invited five members of Mr. Jackson's family to attend the sentencing proceeding. A. 100, 110. The government then proceeded to discuss the September 2010 shooting at great length in support of its request for a substantially higher sentence than what the defense had sought. A. 112 – 13.

In fashioning a sentence, the court noted that it would "acknowledge and … take into account in imposing the sentence the concerns that underlie the government's recommendation for a sentence at the high end of the guidelines range." A. 125. The court then sentenced Mr. Leary to 109 months in prison, which was mid-way between the low and high end of the Sentencing Guidelines range that applied given the offense level of 29 and the Criminal History Category of II. A. 125.

Subsequently, in the context of a motion made pursuant to Fed.R.Crim.P. 35, Mr. Leary objected to the inclusion of any information about the September 2010 shooting in determining his sentence unless such conduct would be considered "relevant" for purposes of the Sentencing Guidelines. A. 140. Had the September 2010 case been "relevant conduct" Mr. Leary would not have received a criminal history category point for the Passaic County case and he would have been in Criminal History Category I, not Criminal History Category II. A. 140.

The stipulated offense level of 29 would thus have yielded a Sentencing Guidelines range of 87 – 108 months, with the top end of the range lower than the actual sentence that Mr. Leary received. A. 141. A sentence midway between that adjusted range would have been 96 months. A. 141.

Additionally, given that the government had treated the facts underlying the September 2010 case as relevant to the sentence here (beyond simply as part of the criminal history calculation), defense counsel argued that the sentence should have been reduced by 22 months to account for state time already served in connection with the September 2010 matter. A. 141

The district court did not grant the defense requests to modify Mr. Leary's sentence.

## I. Standard of Review

This Court "review[s] interpretations of plea agreements *de novo* and in accordance with principles of contract law." *United States v. Riera,* 298 F.3d 128, 133 (2d Cir.2002). Should this Court conclude that Mr. Leary's Rule 35 motion did not constitute a contemporaneous objection, this Court will review the plea agreement for plain error, *Puckett v. United States,* 556 U.S. 129, 135 (2009), which looks to whether there was "(1) error, (2) that is plain, and (3) that affects substantial rights" and "(4) [that] seriously affects the fairness, integrity, or public

reputation of judicial proceedings." *United States v. Thomas,* 274 F.3d 655, 667

(2d Cir.2001) (internal quotation marks and alterations omitted).

This Court reviews "a district court's sentencing decision for procedural and

substantive reasonableness." *United States v. Wernick,* 691 F.3d 108, 113 (2d

Cir.2012). "A district court commits procedural error where it makes a mistake in

its Guidelines calculation, does not consider the § 3553(a) factors, or rests its

sentence on a clearly erroneous finding of fact." *Id.* While unpreserved district

court errors are reviewed under the plain error standard, this Court has "held that

the plain error doctrine should not be applied stringently in the sentencing context,

where the cost of correcting an unpreserved error is not as great as in the trial

context." *Id.* (internal quotation marks omitted).

## II.    Argument

Because the government's arguments regarding the September 2010

shooting undermined the parties' intention as set forth in the plea agreement, Mr.

Leary should be allowed to challenge his sentence in this case. The government's

use of the September 2010 conduct to both heighten Mr. Leary's criminal history

calculation and also to increase his sentence by arguing that it was conduct relevant

to the narcotics conspiracy charged in this case violated the letter and spirit of the

plea agreement. Last, to the extent that it was permissible for the government to

argue – and the District Court to accept – that the September 2010 case was related

8

to Mr. Leary's involvement in the distribution of narcotics, his sentence in this case should have been reduced by the 22 months he spent in state custody in connection with the September 2010 matter.

## A. The Government's Conduct Undermined the Plea Agreement

While an appeal waiver in a plea agreement is generally enforceable, as this Court has noted "any plea agreement which contains a waiver of an important right, such as the right to appeal, poses theoretical concerns." *United States v. Rosa,* 123 F.3d 94, 97 (2d Cir. 1997). Indeed, "[p]lea agreements are subject to the public policy constraints that bear upon the enforcement of other kinds of contracts." *United States v. Yemitan,* 70 F.3d 746, 748 (2d Cir. 1995) (citation omitted). Because the right to appeal serves important interests of both the criminal defendant and of the public at large, waivers of that right must be closely scrutinized and applied narrowly. *United States v. Ready,* 82 F.3d 551, 556 (2d Cir.1996). Criminal defendants have not been held to their waivers of this right in every circumstance. *See id.* at 555. As this Court has recognized, "no circuit has held that these contractual waivers are enforceable on a basis that is unlimited and unexamined." *Id* at 555.

Mr. Leary in this case was induced into entering a plea agreement – one that was drafted unilaterally by the government – that specifically set forth the September 2010 conduct as part of his criminal history background. A. 20. The

parties agreed that in exchange for Mr. Leary pleading guilty to violating 21 U.S.C.

§ 841(b)(1)(C), his criminal history calculation would include the September 2010

conduct. A. 18 – 23. That resulted in Mr. Leary being placed in Criminal History

Category II. A. 20. The reason that no defense objection was made to inclusion of

the September 2010 case as part of Mr. Leary's criminal history was that, based on

"earlier discussions with the government," the Passaic County case was "not

deemed relevant conduct with respect to the instant offense." A. 140. When Mr.

Leary agreed to the terms presented him by the government it was, at least in part,

based on his reasonable understanding that the September 2010 matter was fully

accounted for in the criminal history calculation. After he executed the plea

agreement, including its appeal waiver, the government then unexpectedly relied

on information about the September 2010 incident to show that Mr. Leary was part

of a violent street gang and killed Nyjavar Jackson in connection with a territorial

feud. A. 92. Had the government been forthcoming about its interest in pursuing

dual avenues for punishing Mr. Leary – both enhancing his criminal history

category and introducing the September 2010 case as relevant conduct – he would

have attempted to negotiate the plea differently. In light of the change of position

the government took about the September 2010 case, the appeal waiver in this case

should not be enforced.

**B. The September 2010 Conduct Should Not Count Both as Criminal History and Relevant Conduct**

In the plea agreement, the parties included the September 2010 case as part of Mr. Leary's criminal history background. A. 20. Similarly, the Presentence Investigation Report included discussion of the September 2010 case only when analyzing Mr. Leary's criminal history background, not when discussing the offense conduct. CA. 17 – 18. Then, in its sentencing memo, the government argued that as soon as Mr. Leary was released from custody on the September 2010 case he, in mid-2012, "quickly returned to selling heroin" – the same drug at issue in the instant case. A. 92. The indictment in this case charged conduct chronologically overlapping with what the government characterized in its sentencing memo as Mr. Leary's earlier heroin distribution, which, in turn, overlapped with the September 2010 shooting. At one point during the sentencing hearing, the government took the position that the 22 months that Mr. Leary was in jail for the September 2010 shooting "was a bridge between the time period in which he dealt drugs … ." A. 114. The reasonable inference from the government's argument, then, is that Mr. Leary's involvement in the September 2010 shooting was related to his heroin distribution, which continued through 2012 and was part of the federal indictment.

United States Sentencing Guideline § 1B1.4 provides that in determining a sentence (either within or outside the Guidelines), a court may consider "any

11

information concerning the background, character and conduct of the defendant."
It then, however, in the commentary, notes that "policy statements … express a
Commission policy that certain factors should not be considered for any purpose,
or should be considered only for limited purposes," and directs attention to Chapter
5, Part H, concerning Specific Offender Characteristics. USSG § 1B1.4,
*commentary*.   In that chapter, United States Sentencing Guideline § 5H1.8
concerns criminal history and notes that a departure should be grounded only on
the basis of inadequacy of criminal history category, as addressed in United States
Sentencing Guideline § 4A1.3.

Here, the District Court sentenced Mr. Leary following the prosecution's
presentation, which began with an introduction of "some family members of the
[September 2010 shooting victim] who are in court today.  Obviously this is in
relation to the Passaic County prosecutor's case, but they did decide to come
today." A. 110.  Just prior to sentencing, the government provided a letter to the
court "from the grandmother of the deceased in the New Jersey case." A. 106.
During the sentencing hearing, the government focused on Mr. Leary "regularly
carr[ying] firearms in connection with his drug dealing" – for which the parties had
agreed to a 2-point Sentencing Guidelines adjustment – and the "aggravated
manslaughter in connection with the murder of Nyjavar Jackson." A. 112 – 13.  It
argued that after being released on bail in the Jackson case, in mid-2012, Mr. Leary

12

"went back to selling drugs" and "also possess weapons." A. 113.  In part on the basis of the September 2010 shooting, the government stated that it felt "that his criminal history to date does not reflect his actual dangerousness to the community," but did not specifically request an upward departure under the Guidelines. A. 113.

Prior to announcing sentence, the District Court then noted with respect to the offense conduct that "[d]uring the commission of this offense, [Mr. Leary] carried firearms and he was involved in a dispute with a rival gang in which he shot another individual." A. 120.[2]  It went on to observe that

> At the age of 17, in 2010, he was charged with acting together with another person to commit a murder, and the family members of the person who was killed are here today, and the letter that I received today speaks volumes of the pain that they suffered then and continue to suffer by reason of the loss of their family member.

A. 120 -21.   After discussion of other matters, the court then sentenced Mr. Leary to 109 months in prison, mid-way between the 97 and 121 months authorized under the Sentencing Guidelines given an offense level of 29 and Mr. Leary being in Criminal History Category II. A. 125.

Had the September 2010 conduct not been included in Mr. Leary's criminal history calculation, as it should not have been since it was treated as relevant

---

[2] It is unclear from the record if this comment refers to the September 2010 shooting or another shooting in 2013 with which Mr. Leary was not charged, but that the government mentioned in its sentencing memo.

13

conduct here, he would have fallen into Criminal History I.  The United States

Sentencing Guidelines range for offense level 29 would have been 87 – 108

months.  The District Court erred when it both included Mr. Leary's conviction for

the September 2010 matter both as part of his criminal history category and as

relevant conduct and the sentence should be vacated and the case remanded for

resentencing.

### C. To the Extent that the District Court Considered the September 2010 Shooting to be Conduct Related to the Instant Case, Mr. Leary Should Receive Credit for the Time Already Served in State Custody on that Charge

In the post-sentencing objections, the defense argued that in light of the fact

that the court treated the September 2010 incident as relevant to the instant

charges, Mr. Leary should have been credited with the 22 months he served in state

custody on the Passaic County case.  Failure to do so was error and warrants

vacating the sentence and remanding for resentencing.

As discussed above, the government represented – and the court accepted –

that the September 2010 shooting was related in some way to Mr. Leary's federal

narcotics conspiracy.  Mr. Leary spent 22 months in jail in connection with the

September 2010 case prior to being release on bail.  Yet the sentencing court did

not adjust his federal sentence for the time that he already served on the September

2010 case.

14

Under 18 U.S.C. § 3585(b) a defendant must be given credit toward his term of imprisonment "for any time he has spent in official detention prior to the date the sentence commences … as a result of the offense for which the sentence was imposed … ." The proper way to ensure that the requirement of crediting a defendant is for a court to depart downward from the sentence it would have otherwise imposed. *United States v. Gonzalez*, 192 F.3d 350 (2d Cir. 1999) ( "The proper way to ensure that Gonzalez served a total of 156 months would have been for the court to increase the downward departure it granted him and sentence him to 129 months.") The Sentencing Guidelines contemplate just such a scenario, but expand the scope of credit for time served to include those terms of incarceration that result from "relevant conduct." United States Sentencing Guideline § 5G1.3(b) provides that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction" under United States Sentencing Guideline § 1B1.3, then the sentence must be adjusted "for any period of imprisonment already served on the undischarged term of imprisonment" if the Bureau of Prisons will not apply such credit automatically.

By relying on the victim statements in describing Mr. Leary's criminal misconduct, the government necessarily – even if not explicitly – treated that prior case as relevant conduct. As the prosecutor herself explained, the 22-month term in jail was the "bridge" between Mr. Leary's narcotics distribution activities. A.

15

114. Relevant conduct for purposes of the Sentencing Guidelines is any act committed during commission of the offense, "in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). Here, the September 2010 shooting was, according to the government, a direct link to Mr. Leary's narcotics conspiracy and, as such, should have resulted in a sentencing adjustment that credited Mr. Leary for the 22 months in state custody already served for that conduct. Failure to do so was error and warrants vacating the sentence and remanding for resentencing.

## III.  Conclusion

The district court's sentence here impermissibly double-counted the September 2010 conduct as both part of Rahjohn Leary's criminal history and as relevant conduct and failed to credit him for time served in state custody for that relevant conduct. The sentence should therefore be vacated and the matter remanded for resentencing.

Dated this 18th day of March 2016.

Respectfully submitted,
By:   /s/ Joyce C. London
Joyce C. London, Esq.
JOYCE C. LONDON P.C.
59 Maiden Lane
New York, NY 10038
Telephone: (212) 964-3700
jlondonlaw@aol.com

*Attorney for Defendant-Appellant,*
*Rahjon Leary*

16

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify, pursuant to Fed.R.App.P. 32(a)(7)(B) and Second Circuit Rule 32.1, that this brief is reproduced using proportional typeface of Times New Roman, 14 points in size, is double-spaced and consists of 3,423 words, as calculated in the word count program in Microsoft Word, including footnotes and headings and quotations.

Dated: March 18, 2016

By\_\_\_\_\_ /s/ Joyce C. London